**RECEIVED**

JUN 1 5 2009
_mbd_
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**SONIA JOSEPH**
**together with all individuals and entities**
**whose names appear on the attached**
**"Exhibit A"**

**6:09-cv-01006    LAF**

**versus**

**ALLIANCE HOMES, INC. d/b/a**
**ADRIAN HOMES,** *et al.*

**MAGISTRATE:_____**

## COMPLAINT FOR DAMAGES

This Complaint of certain persons of the full age of majority, on behalf of themselves and, in some instances, on behalf of individuals who lack the capacity to sue individually (hereinafter "Plaintiffs"), who are all named in the annexed listing of all Plaintiffs (hereinafter, "Exhibit A"), through undersigned counsel, respectfully represents that:

## I.   PARTIES

1. Each Plaintiff is, for purposes of 28 U.S.C. § 1332, a citizen of a state other than the state(s) in which Defendants are citizens.

2. Plaintiffs are those individuals and entities listed on the attached Exhibit A, which is incorporated herein as if set forth *in extenso*.

3. Plaintiffs have not yet exhausted the requirements under the Federal Tort Claims Procedure, 28 U.S.C. 2671 *et seq.*, to submit their claims for administrative review and adjustment, and now specifically assert all claims enumerated below against the Manufacturing Defendants, Procurement Defendants and No-Bid Defendants named herein, reserving their rights to supplement this complaint to include their claims against the United States of America through FEMA.

1

4. Plaintiffs further reserve their rights to supplement this complaint to include their claims against Shaw Enterprises at the same time Plaintiffs amend the complaint to bring in the United States of America through FEMA.

5. Made defendants herein are:

The "Manufacturing Defendants," designated below as follows:

      i.     **Alliance Homes, Inc. d/b/a Adrian Homes** is upon information and belief a Georgia corporate entity which conducts business in the state of Louisiana, and which manufactured or supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

      ii.     **American Camper Manufacturing, LLC d/b/a AMERI-CAMP** is upon information and belief an Indiana limited liability company which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

      iii.     **American Homestar Corporation** is upon information and belief a Texas corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

      iv.     **Cavalier Home Builders, LLC** is upon information and belief a Delaware limited liability company which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

      v.     **Cavalier Homes Inc.** is upon information and belief a Delaware corporate entity which conducts business in the state of Louisiana, and which

2

manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

vi.   **Champion Home Builders Co.** is upon information and belief a Michigan corporation which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units pursuant to contracts with FEMA for use in that state.

vii.   **Circle B Enterprises, Inc.** is upon information and belief a Georgia corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

viii.   **Clayton Homes of Lafayette, Inc. (f/k/a Clayton Homes, Inc.)** is upon information and belief an Indiana corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

ix.   **CMH Manufacturing Inc.** is upon information and belief a Tennessee corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units to FEMA for use in that state.

x.   **Coachmen Industries, Inc.** is upon information and belief an Indiana corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

xi.   **Coachmen Recreational Vehicle Company, LLC** is upon information and belief an Indiana limited liability company which conducts business in the state of Louisiana, and which manufactured and supplied FEMA

3

trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

xii. **Design Homes, Inc.** is upon information and belief a Wisconsin corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

xiii. **Destiny Industries, LLC** is upon information and belief a Georgia limited liability company which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

xiv. **DS Corp.** is upon information and belief an Indiana limited liability company which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

xv. **Dutch Housing, Inc. d/b/a Champion Homes** is upon information and belief a Michigan corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

xvi. **Dutchmen Manufacturing, Inc.** is upon information and belief a Delaware corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

xvii. **Fairmont Homes, Inc.** is upon information and belief an Indiana corporate entity which conducts business in the state of Louisiana, and

4

which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

xviii. **Fleetwood Canada, Ltd.** is upon information and belief a foreign corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

xix. **Forest River, Inc.** is upon information and belief an Indiana corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

xx. **Frontier RV, Inc.** is upon information and belief a Texas corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

xxi. **Giles Industries, Inc.** is upon information and belief an Alabama corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

xxii. **Giles Industries of New Tazewell, Incorporated** is upon information and belief a foreign corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

xxiii. **Golden West Homes** is upon information and belief a California corporate entity which conducts business in the state of Louisiana, and

5

which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

xxiv. **Gulf Stream Coach, Inc.** is upon information and belief an Indiana corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

xxv. **Heartland Recreational Vehicles, LLC** is upon information and belief an Indiana limited liability company which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units pursuant to contracts with FEMA for use in that state.

xxvi. **Homes of Merit, Inc.** is upon information and belief a Florida corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units pursuant to contracts with FEMA for use in that state.

xxvii. **Horton Homes, Inc.** is upon information and belief a Georgia corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

xxviii. **Hy-Line Enterprises, Inc** is upon information and belief an Indiana corporate entity which conducts business in the state of Louisiana, and which manufactured and  supplied FEMA trailers or housing units pursuant to contracts with FEMA for use in that state.

xxix. **Indiana Building Systems, LLC d/b/a Holly Park** is upon information and belief an Indiana limited liability company which conducts business in the state of Louisiana, and which manufactured and supplied FEMA

6

trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

xxx. **Integrity Midwest Inc. d/b/a US Adventure RV** is upon information and belief an Iowa corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

xxxi. **Jayco, Inc.** is upon information and belief an Indiana corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

xxxii. **Keystone Industries, Inc.** is upon information and belief an Indiana corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

xxxiii. **Keystone RV Company** is upon information and belief a Delaware corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

xxxiv. **KZRV, LP** is upon information and belief an Indiana limited partnership which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

xxxv. **Lakeside Park Homes, Inc.** is upon information and belief a Georgia corporate entity which conducts business in the state of Louisiana, and

which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

xxxvi. **Layton Homes Corp.** is upon information and belief an Indiana corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

xxxvii. **Lexington Homes** is upon information and belief a Mississippi corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units pursuant to contracts with FEMA for use in that state.

xxxviii.        **Liberty Homes Inc.** is upon information and belief an Indiana corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

xxxix. **Liberty RV & Marine, Inc.** is upon information and belief a Florida corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

xl.        **Monaco Coach Corporation** is upon information and belief a Delaware corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

xli.        **Morgan Buildings & Spas, Inc.** is upon information and belief a Nevada corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

xlii.   **Morgan Building Systems, Inc.** is upon information and belief a Texas corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

xlv.    **Oak Creek Homes, L.P.** is upon information and belief a Texas limited partnership which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

xlvi.   **Oak Creek Homes, Inc.** is upon information and belief a foreign corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

xlvii.  **Oakwood Homes, LLC** is upon information and belief a Georgia limited liability company which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

xlviii. **Palm Harbor Homes, Inc.** is upon information and belief a Texas corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

xlix.   **Palm Harbor Manufacturing, Inc.,** is upon information and belief a foreign corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units to FEMA for use in that state.

l.      **Patriot Homes, Inc.** is upon information and belief an Indiana corporate entity which conducts business in the state of Louisiana, and which

9

manufactured and supplied FEMA trailers or housing units as defined
below pursuant to contracts with FEMA for use in that state.

li.    **Philips Products, Inc.** is upon information and belief a Delaware
corporate entity which conducts business in the state of Louisiana, and
which manufactured and supplied FEMA trailers or housing units as
defined below pursuant to contracts with FEMA for use in that state.

lii.    **Play-Mor Trailers, Inc.** which upon information and belief is a Missouri
corporate entity  which conducts business in the state of Louisiana, and
which manufactured and supplied FEMA trailers or housing units pursuant
to contracts with FEMA for use in that state.

liii.    **Recreation By Design, LLC** is upon information and belief an Indiana
limited liability company which conducts business in the state of
Louisiana, and which manufactured and supplied FEMA trailers or
housing units as defined below pursuant to contracts with FEMA for use
in that state.

liv.    **Redman Homes Inc. (f/k/a Dutch Homes)** is upon information and belief
a Delaware corporate entity which conducts business in the state of
Louisiana, and which manufactured and supplied FEMA trailers or
housing units as defined below pursuant to contracts with FEMA for use
in that state.

lv.    **River Birch Homes, Inc. and/or River Birch Homes, L.L.C.** is/are upon
information and belief an Alabama corporate entity/limited liability
company which conducts business in the state of Louisiana, and which
manufactured and supplied FEMA trailers or housing units as defined
below pursuant to contracts with FEMA for use in that state.

lvi.   **Scotbilt Homes, Inc.** is upon information and belief a Georgia corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

lvii.  **Silver Creek Homes, Inc.** is upon information and belief a Texas corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

lviii. **Skyline Corporation** is upon information and belief an Indiana corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

lix.   **Starcraft RV, Inc.** is upon information and belief an Indiana corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

lx.    **Southern Energy Homes, Inc.** is upon information and belief a Delaware corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

lxi.   **Stewart Park Homes, Inc.** is upon information and belief a Georgia corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

lxii.  **SunnyBrook RV, Inc.** is upon information and belief an Indiana corporate entity which conducts business in Louisiana, and which

manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

lxiii.   **Sunray RV, LLC** is upon information and belief a Tennessee limited liability company which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

lxiv.   **Superior Homes, LLC** is upon information and belief a South Dakota limited liability company which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

lxv.   **Tom Stinnett Holiday RV Center Inc.** is upon information and belief an Indiana corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

lxvi.   **Thor California, Inc., doing business in California as Thor Manufacturing** is upon information and belief a Delaware corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

lxvii.   **Thor Industries, Inc.** is upon information and belief Delaware corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

lxviii.   **Timberland RV Company d/b/a Adventure Manufacturing** is upon information and belief an Indiana corporate entity which conducts

12

business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units pursuant to contracts with FEMA for use in that state.

lxix.    **TL Industries, Inc.** is upon information and belief an Indiana corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

lxx.    **Vanguard Industries of Michigan, Inc. (a/k/a Palomino RV)** is upon information and belief a Michigan corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

lxxi.    **Viking Recreational Vehicles, LLC** is upon information and belief a Michigan company which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units for use in that state.

xlvi.    **Waverlee Homes, Inc.** is upon information and belief an Alabama corporate entity which conducts business in the state of Louisiana, and which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in that state.

xlvii.    The following manufacturers are not named defendants in this action because they filed for bankruptcy protection:

a) Fleetwood Enterprises, Inc. and Fleetwood Homes of North Carolina, Inc. (collectively "Fleetwood") are not defendants in this action, because they filed for bankruptcy protection under chapter 11 of United States Bankruptcy Code in the U.S. Bankruptcy Court, Central District of

California (Case No. 09-14254-MJ), on March 10, 2009, and the commencement of a judicial proceeding by the Plaintiffs against Fleetwood is automatically stayed pursuant to the automatic stay provisions of the 11 U.S.C. 362 (a).

b) Pilgrim International, Inc. ("Pilgrim") is not a defendant in this action because it filed for bankruptcy protection under chapter 7 of United States Bankruptcy Code in the U.S. Bankruptcy Court, Northern District of Indiana (Case No. 08-33256-hcd ), on September 22, 2008 and the commencement of a judicial proceeding by the Plaintiffs against Pilgrim is automatically stayed pursuant to 11 U.S.C. 362(a).

c) Monoco Coach Corporation ("Monoco") is not a defendant in this action because it filed for bankruptcy protection under Chapter 11 of United States Bankruptcy Code in the U.S. Bankruptcy Court for the District of Delaware (Case No. 1:09-BK-10750), on March 5, 2009, and the commencement of a judicial proceeding by the Plaintiffs against Monaco is automatically stayed pursuant to the automatic stay provisions of 11 U.S.C. 362 (a).

d) R-Vision, Inc. ("R-Vision") is not a defendant in this action because it filed for bankruptcy protection under chapter 11 United States Bankruptcy Code in the U.S. Bankruptcy Court for the District of Delaware (Case No. 1:09-BK-10759), on March 5, 2009, and the commencement of a judicial proceeding by the Plaintiffs against R-Vision is automatically stayed pursuant to 11 U.S.C. 362(a).

xlviii.  Plaintiffs reserve their rights against these or any other bankrupt manufacturers and intend to take appropriate steps to protect their interests.

xlix. Plaintiffs further reserve their rights to proceed against unnamed defendants which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in Mississippi.

The "No-Bid Defendants," designated below, are:

i. **Fluor Enterprises, Inc. ("Fluor")**, a Delaware corporation with its principal place of business in Irving, Texas, licensed to do business in the State of Louisiana and in good standing, received a No-Bid contract from FEMA and was tasked with, amongst other things, performing significant functions in the transportation, delivery, installation, maintenance and repair, de-installation and refurbishment of the temporary housing units provided by FEMA to the victims of hurricanes Katrina and Rita.

ii. **CH2M Hill Constructors, Inc. ("CH2M")**, a Delaware corporation with its principal place of business in Englewood, Colorado, licensed to do business in the State of Louisiana and in good standing, received a No-Bid contract from FEMA and was tasked with, amongst other things, performing significant functions in the transportation, delivery, installation, maintenance and repair, de-installation and refurbishment of the temporary housing units provided by FEMA to the victims of hurricanes Katrina and Rita.

iii. Other as yet unnamed Defendants which were tasked with performing significant functions in transportation, delivery, installation, maintenance and repair, de-installation and refurbishment of the temporary housing units provided by FEMA to the victims of hurricanes Katrina and Rita.

The "Procurement Defendants," designated below, are:

i.   **North American Catastrophe Services, Inc. ("NACS")**, a Florida
     corporation, not licensed to do business in Louisiana, received a contract
     from the United States to identify, select and procure temporary housing
     units for those displaced by hurricanes Katrina and Rita.

ii.  **Morgan Building & Spa Manufacturing Corporation ("Morgan")** , a
     Nevada corporation with its principal place of business in Garland, Texas,
     licensed to do business in the State of Louisiana and in good standing,
     received a contract from the United States to identify, select and procure
     temporary housing units for those displaced by hurricanes Katrina and
     Rita.

## II.   JURISDICTION AND VENUE

6.  Certain Manufacturing Defendants named herein are subject to the *in personam*
    jurisdiction of this Court because they do substantial business in the State of Louisiana
    and within this federal district, and at all times relevant hereto engaged in commerce both
    in this federal district and in the State of Louisiana.

7.  Pursuant to 28 U.S.C. § 1332, this Court has subject matter jurisdiction over the claims
    asserted herein against the defendant(s) with citizenship other than that of plaintiff(s),
    because of diversity of citizenship and because the amount in controversy exceeds
    $75,000.00, exclusive of interest and costs.

8.  Venue is proper in the Western District of Louisiana pursuant to 28 U.S.C. § 1391, as the
    emergency housing units were provided to the Plaintiffs in this district, and Plaintiffs'
    injuries were sustained in this district.

## III.   BACKGROUND

9.  Plaintiffs each reside or have resided in manufactured mobile homes or travel trailers (hereinafter, collectively referred to as "Housing Units") in the State of Louisiana. These Housing Units were provided by the Federal Emergency Management Agency ("FEMA") after the landfalls of Hurricane Katrina and Hurricane Rita in August and September, 2005. Persons residing or living in these Housing Units have been and continue to be subjected to harmful levels of formaldehyde while residing in the Housing Units.

10. As a result of these devastating hurricanes, the homes and residences of hundreds of thousands of citizens of the Gulf Coast were rendered uninhabitable, leaving these citizens homeless.

11. Eventually, the United States federal government, through FEMA, began providing temporary housing to citizens, including Plaintiffs, in the form of housing units which became widely known as "FEMA trailers."

12. Of the housing units at issue, "mobile homes" are generally wider than 8 feet and/or longer than 40 feet, for average area greater than 320 square feet. They are designed to be used as permanent homes and are defined and regulated by the U.S. Department of Housing and Urban Development ("HUD"). *See* Center for Disease Control and Prevention, INTERIM FINDINGS ON FORMALDEHYDE LEVELS IN FEMA-SUPPLIED TRAVEL TRAILERS, PARK MODELS, AND MOBILE HOMES, Feb. 29, 2008, at 4, *available at* http:www/cdc.gov/Features/FEMAtrailersFindings/pdf/interim_findings.pdf.

13. Of the housing units at issue, "travel trailers" are wheel-mounted and generally no larger than 8 feet wide and 40 feet long, for an average area of less than 320 square feet. They are designed to provide temporary living quarters and are generally considered vehicles, regulated by state transportation authorities rather than housing authorities. *Id.*

14. Of the housing units at issue, "park models" are larger versions of travel trailers (up to 400 square feet in area). They are designed for temporary living quarters and, although they are manufactured housing, they are exempted from HUD construction standards,

typically regulated by transportation authorities and by manufacturer acceptance of a voluntary American National Standards Institute ("ANSI") standard applying to their construction. *Id.*

15. FEMA was established in 1979 to provide a single point of accountability for the Federal Government's disaster response. Since its inception, FEMA has been charged with providing temporary housing to victims of numerous major disasters, including other hurricanes, earthquakes, wildfires, and civil unrest. FEMA's disaster response obligations are delineated in Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. 4121, *et seq.* (the "Stafford Act").

16. The Stafford Act outlines two types of temporary housing assistance to be made available to eligible, displaced applicants: financial assistance and direct services. This aid is sometimes referred to as Section 408 assistance. This provision was enacted as Public Law 93-288, Title IV, 408 (1988). Under the Stafford Act, at 42 U.S.C. 5174, the Executive, through FEMA, may provide "direct assistance" in the form of temporary housing units, acquired by purchase or lease, directly to individuals or households who, because of a lack of available housing resources, would be unable to make use of the alternative "financial assistance" provided under subparagraph (c)(1)(A).

17. Acting under the Stafford Act, FEMA contracted to purchase many thousands of travel trailers and mobile homes for provision to victims of Katrina and Rita, resulting in payments of many billions of dollars to Defendants collectively.

18. FEMA contracted with the Manufacturing Defendants to purchase thousands of the housing units, primarily travel trailers, for provision to the Plaintiffs as temporary housing.

19. Many of these housing units were purchased directly off the lots of some of the Manufacturing Defendants and/or their vendors.

20. In addition, the Manufacturing Defendants rushed through production many of the housing units, using substandard materials and/or employing irregular practices during the manufacturing process, all of which resulted in the housing units occupied by Plaintiffs containing higher than normal levels of formaldehyde.

21. On information and belief, the housing units of Plaintiffs herein, both those which were manufactured prior to the hurricanes and those later manufactured and purchased by FEMA, deviated from Government specifications pertaining to the safety of the units as residences.

22. Plaintiffs submit that there existed no Governmental specifications addressed to the design/manufacture/construction and/or warnings relative to formaldehyde levels in the housing units.

23. Plaintiffs submit that the housing units, both those which were manufactured prior to the hurricanes and those later manufactured and purchased by FEMA, did not conform to any Government-imposed specifications which addressed the design and/or construction of the housing units as pertains to formaldehyde levels.

24. Plaintiffs submit that the housing units, both those which were manufactured prior to the hurricanes and those later manufactured and purchased by FEMA, contained dangerous levels of formaldehyde due to the Manufacturing Defendants' use of certain materials in their construction and/or posed the threat of producing dangerous levels of formaldehyde due to the Federal Government's intended use of the housing units as temporary residences for at least 18 months, but that the Manufacturing Defendants failed to warn the Federal Government about these dangers, which initially were not known to the Federal Government.

25. Plaintiffs submit that Manufacturing Defendants ignored or deliberately and fraudulently concealed and/or condoned the concealment, and/or conspired with, advised, encouraged, or aided others and/or each other to conceal that the housing units, both those which were

manufactured prior to the hurricanes and those later manufactured and purchased by
FEMA, contained dangerous levels of formaldehyde due to the Manufacturing
Defendants' use of certain materials in their construction, and/or posed the threat of
producing dangerous levels of formaldehyde to the Federal Government's intended use of
the housing units temporary residences for at least 18 months, all in order to sell the
Manufacturing Defendants' products, and/or avoid the costs of safety
precautions/inspections, and/or avoid litigation by persons injured by formaldehyde
emissions.

26. All of the Plaintiffs have spent significant time in the FEMA-provided housing units
manufactured by one or more of the named or unnamed Manufacturing Defendants and
provided to Plaintiffs by the Federal Government. As a result, Plaintiffs unwittingly have
been exposed to dangerously high concentrations of the formaldehyde which is emitted
from products used in the manufacture of the subject housing units.

27. Formaldehyde is found in construction materials such as particle board, fiberboard and
plywood, as well as glues and adhesives used in the manufacture of the housing units.
Pursuant to federal law, the defendants are required to display a "Health Notice" about
exposure to formaldehyde which reads:

### IMPORTANT HEALTH NOTICE

Some of the building materials used in this home emit formaldehyde.
Eye, nose and throat irritation, headache, nausea, and a variety of
asthma-like symptoms, including shortness of breath, have been
reported as a result of formaldehyde exposure. Elderly persons and
young children, as well as anyone with a history of asthma, allergies,
or lung problems, may be at greater risk. Research is continuing on
the possible long-term effects of exposure to formaldehyde.

Reduced ventilation resulting from energy efficiency standards may
allow formaldehyde and other contaminants to accumulate in the
indoor air. Additional ventilation to dilute the indoor air may be
obtained from a passive or mechanical ventilation system offered by

the manufacturer. Consult your dealer for information about the
ventilation options offered with this home.

High indoor temperatures and humidity raise formaldehyde levels.
When a home is to be located in areas subject to extreme summer
temperatures, an air-conditioning system can be used to control indoor
temperature levels. Check the comfort cooling certificate to determine
if this home has been equipped or designed for the installation of an
air-conditioning system.

If you have any questions regarding the health effects of
formaldehyde, consult your doctor or local health department.

*See* 24 C.F.R. § 3280.209.

28. According to the National Cancer Institute, formaldehyde has been classified as a human
carcinogen (cancer causing substance) by the International Agency for Research on
Cancer and as a probable human carcinogen by the U.S. Environmental Protection
Agency ("EPA"). Additionally, the Agency for Toxic Substances and Disease Registry
("ATSDR") has reported to FEMA and members of Congress that not only is
formaldehyde classified as "reasonably anticipated to be a human carcinogen," but also
that there is no recognized safe level of exposure, and that any level of exposure to
formaldehyde may pose a cancer risk, regardless of duration.

29. Most published exposure standards for formaldehyde address protection levels for the
adult working population in the workplace, based upon a 40-hour work week, and
specifically do not address chronic exposure level or protection levels for the more
susceptible population, for instance, the very young, the elderly and those with
respiratory, skin and other chronic diseases. Nonetheless, reference to the levels
established by the Occupational Safety and Health Administration ("OSHA") evidences
formaldehyde's harmful effects. In 1987, OSHA reduced the amount of formaldehyde to
which workers can be exposed over an 8-hour day from 3 ppm to 1 ppm. In May, 1992,
the formaldehyde exposure limit was further reduced to .75 ppm.

30. HUD regulates formaldehyde levels in certain construction materials to include the pressed wood products used in manufactured housing (such as prefabricated mobile homes).  HUD has far stricter exposure limits for residential formaldehyde emissions.  By regulation, "All plywood and particle board materials bonded with a resin system or coated with a surface finish containing formaldehyde shall not exceed the following formaldehyde emission levels when installed in manufactured homes: (1) Plywood materials shall not emit formaldehyde in excess of 0.2 parts per million (ppm)…[and] (2) Particle board materials shall not emit formaldehyde in excess of 0.3 ppm…" *See* 24 C.F.R. § 3280.308.

31. Both the EPA and the ATSDR have suggested values for safe formaldehyde exposure, which are reproduced below, which values are applicable herein since the FEMA trailers/housing units at issue were intended to be occupied for up to a year and a half by evacuees. *See* 44 C.F.R. § 206.110(e)

| Agency | Standard |
|---|---|
| EPA recognized level at which acute health effects can manifest | 0.1 parts per million (ppm) |
| Agency for Toxic Substances and Disease Registry Minimum Risk Levels (MRL) | 0.04 ppm – short exposures up to 14 days |
| | 0.03 ppm – exposure durations between two weeks and a year |
| | 0.008 ppm – exposures exceeding 365 days |

*See* Union of Concerned Scientists, Citizens and Scientists for Environmental Solutions, *FEMA Exposes Gulf Coast Residents to Formaldehyde*, updated on Dec. 19, 2007, *available at* http://www.ucsusa.org/scientific_integrity/interference/fema-trailers.html.

32. The Federal Government and the Manufacturing Defendants knew or should have known of the health hazards inherent in the products they distributed and constructed, by familiarity with industry standards and published medical studies.

33. Nevertheless, the Federal Government provided housing to the plaintiffs which contained formaldehyde capable of emitting levels which are dangerously unhealthy and exceed the levels permitted by law and have and will result in injury to the plaintiffs.

34. Defendants provided Housing Units to the Plaintiffs, each of which emit formaldehyde at dangerously unhealthy levels, which have resulted and will continue to result in injury to the Plaintiffs.

35. At all times, the Procurement Defendants identified, selected and procured travel trailers for FEMA to utilize as temporary housing units under the Stafford Act, while failing to consult with manufacturers regarding the warnings or instructions against the use of travel trailers for extended occupancy.

36. The Procurement Defendants communicated with manufacturers prior to hurricanes Katrina and Rita regarding the financial opportunities associated with the provision of travel trailers as temporary housing units, but failed to take into account or research the health concerns relating to formaldehyde exposure to occupants of the travel trailers and other foreseeable problems and defects which would occur during an extended occupancy.

37. The Procurement Defendants knew or should have known that the Federal Government's intended use of the travel trailers and other temporary housing units was for residential occupancy for periods up to eighteen months, if not longer, pursuant to the emergency housing mandate of the Stafford Act.

38. The Procurement Defendants knew or should have known that the manufacturers' intended use of the travel trailers was for intermittent, recreational use, and that the travel trailers were designed as recreational vehicles rather than permanent or long-term

housing units. Further, the Procurement Defendants knew or should have known that the manufacturers warned against long-term occupancy of the travel trailers. In identifying, selecting and procuring travel trailers for converted use by FEMA as temporary housing units, the Procurement Defendants created and contributed to a situation where hundreds of thousands of people displaced by hurricanes Katrina and Rita were exposed to elevated and hazardous levels of formaldehyde.

39. Following the procurement of the temporary housing units by the Procurement Defendants, the Federal Government contracted with the No-Bid Defendants to implement the mandates of the Stafford Act in the areas affected by hurricanes Katrina and Rita.

40. In order to implement and manage its disaster response obligation and temporary housing mandate under the Stafford Act, FEMA engaged the No-Bid Defendants with No-Bid contracts, eventually amounting to billions of dollars. The Federal Government also relied on the expertise and knowledge of the No-Bid Defendants and the Procurement Defendants to provide information and advice on, among other things, the conversion of the mobile travel trailers into temporary housing units for periods up to, and potentially exceeding, eighteen months in duration.

41. The provision of temporary housing to Plaintiffs created a duty on the part of the Federal Government to insure that such housing was habitable in a safe and sanitary condition. However, the housing provided is and was, at all times pertinent hereto, unsafe and presented a clear and present danger to the health and well-being of the Plaintiffs and their families by exposing them to elevated and hazardous levels of formaldehyde.

42. Upon information and belief, the No-Bid Defendants were engaged by FEMA to assist with the implementation of the Stafford Act in Louisiana in the aftermath of hurricanes Katrina and Rita, from the pick-up of a unit at a FEMA staging area through the decommissioning and de-installation of the units at the end of the contracts.

43. The No-Bid Defendants were tasked with the transportation, installation, site identification and preparation of locations and group sites, preparation of infrastructure to handle the units, inspection of the temporary housing units, maintenance and repair, refurbishment and restoration, and the eventual de-installation and removal of the units.

44. Under the terms of their contracts, the No-Bid Defendants were obligated to adhere to all warnings and instructions relating to the temporary housing units as provided and indicated by the manufacturers of same. Further, under their No-Bid contracts with FEMA, the No-Bid Defendants were obligated to advise and instruct FEMA regarding the implementation of those contracts. The No-Bid Defendants failed to properly fulfill either of these tasks.

45. The No-Bid Defendants contracted with FEMA to pick-up and transport the temporary housing units from FEMA-controlled staging areas and deliver them to areas which the No-Bid Defendants were tasked with operating. These new areas included staging areas specific to each of the No-Bid Defendants, group sites to be managed and maintained as assigned to one of the No-Bid Defendants or individual locations and addresses where the No-Bid Defendant assigned that temporary housing unit would have obligations to manage and maintain it.

46. To accomplish their contractual obligations with FEMA, in addition to the use of subsidiary companies, the No-Bid Defendants entered into numerous subcontracts, but at all times retained supervisory capacity and responsibility under their individual contracts with FEMA.

47. The No-Bid Defendants were tasked under their contracts with FEMA to identify and prepare the infrastructure for the various group site locations each No-Bid Defendant would operate. This included, amongst other things, ensuring there would be adequate water, sewage, electricity, etc. The No-Bid Defendants knew or should have known that these preparations were for long-term occupancy of the temporary housing units.

48. Once the temporary housing units were transported and delivered to a particular location, the No-Bid defendant had the responsibility for installing the temporary housing unit. The No-Bid Defendants installed the temporary housing units by "blocking" the unit. This meant raising the unit several feet into the air and off of its wheel base, and setting it on concrete blocks.

49. By blocking the temporary housing units, the No-Bid Defendants created stress and flexing on the frames of the units, as they were not designed to be lifted off of the wheel base. In fact, the manufacturers of the temporary housing units warned in the various owners' manuals provided with the units, that the units should not be jacked so that the vehicle's weight is no longer supported by the wheels.

50. The stress and flexing of the temporary housing units' frames caused by the No-Bid Defendants "blocking" them with weight off of the wheels created distortion in the travel trailer's shell, allowing increased moisture intrusion which contributed to increased formaldehyde exposures.

51. The temporary housing units provided by FEMA were for the most part travel trailers. The travel trailers are, by definition, mobile. They are designed for and intended for periodic, recreational use and not for long-term habitation. By installing the travel trailers on concrete blocks for extended occupancy, the No-Bid Defendants knowingly and intentionally modified the design and the actual use of these units by converting them into temporary housing units to be used as a residence for long term occupancy in some instances exceeding 18 months.

52. The No-Bid Defendants failed to consult with the manufacturers of the temporary housing units with regard to the installation, warnings, warranty issues or advisability of using travel trailers for long-term residence and occupation. The No-Bid Defendants took actions which voided the warranties of the manufacturers and directly created or contributed to unsafe and hazardous living conditions in the temporary housing units.

26

53. Once the No-Bid Defendants had completed the transportation, delivery and installation of the temporary housing units, the No-Bid Defendants were tasked with inspecting the units to ensure that they were safe and habitable, prior to occupancy by hurricane disaster victims. Upon information and belief, the No-Bid Defendants failed to adequately inspect the temporary housing units to ensure that the units were safe and suitable for their intended use – the long-term occupancy by individuals and families displaced by hurricanes Katrina and Rita. This failure to properly inspect the units for unsafe or hazardous conditions directly contributed to the adverse health effects suffered by hurricane victims.

54. In addition to transportation, site identification, installation and inspection, all FEMA temporary housing units provided in response to hurricanes Katrina and Rita in Louisiana, were also managed, maintained and repaired by one of the No-Bid Defendants, or their various subcontractors over whom they maintained direct oversight and responsibility. Upon information and belief, the No-Bid Defendants failed to adequately manage, maintain and repair the temporary housing units which enabled and contributed to the unsafe and hazardous conditions that led to adverse health effects amongst many thousands of residents of the temporary housing units.

55. Parallel to their duty to manage, maintain and repair the temporary housing units, the No-Bid Defendants failed to undertake appropriate action, maintenance or repair in response to numerous complaints made by occupants of the temporary housing units to various adverse health effects caused by exposure to elevated levels of formaldehyde.

56. Following the occupancy of the temporary housing units, the No-Bid Defendants were tasked with their de-installation. Upon discovering the deteriorated condition of the temporary housing units at the time of de-installation and removal, the No-Bid Defendants failed to identify the unsuitability of the temporary housing units for long-term occupancy.

57. In addition to de-installation of the temporary housing units, the No-Bid Defendants were tasked with refurbishment and restoration of the temporary housing units for use, either in direct response to hurricanes Katrina and Rita or for use in the future. By restoring and refurbishing these temporary housing units, the No-Bid Defendants warranted that the units were fit for their intended use, long term occupancy in response to disaster related displacement. By restoring and refurbishing these temporary housing units, the No-Bid Defendants created and perpetuated existing hazardous conditions which would foreseeably lead to adverse health effects caused by the elevated levels of formaldehyde in the temporary housing units. Further, in thousands of cases, following the restoration and refurbishment, these temporary housing units were immediately occupied by new individuals or families displaced by hurricane Katrina and Rita, and who were then directly exposed to hazardous levels of formaldehyde.

58. The No-Bid Defendants failed, at every stage of their involvement, to warn the residents of the temporary housing units, including Plaintiffs herein, of the potential risk of hazardous and unsafe living conditions due to the presence of elevated levels of formaldehyde – a known human carcinogen – which led directly to adverse health effects, including but not limited to the advent of childhood asthma and the onset of adult asthma in some of the trailer residents.

59. Through their actions and omissions, the No-Bid Defendants created and perpetuated a situation wherein occupants of the temporary housing units were exposed to elevated levels of formaldehyde and, as a result, suffered adverse health effects. The No-Bid Defendants negligently failed to adhere to the manufacturer instructions and warnings related to: (1) the manufacturers' intended (shot-term) use of the temporary housing units; (2) the installation and set-up of the temporary housing units; and (3) the warning that the temporary housing units contained urea formaldehyde resin which would release formaldehyde gas directly into the intended living space.

60. The No-Bid Defendants failed to warn the occupants of the temporary housing units, including Plaintiffs herein, of the hazardous conditions created by the elevated levels of formaldehyde in the temporary housing units.

61. By restoring and refurbishing the trailer for future habitation, the No-Bid Defendants improperly and negligently warranted that the units were fit for the intended use of long-term occupancy.

62. Finally, despite these failures, the No-Bid Defendants received billions of dollars in contracts from FEMA and the United States government at the expense of the health, and in some cases lives, of thousands of occupants of these temporary housing units who simply had nowhere else to go and who were relying on FEMA and its contactors to keep them safe in the aftermath of the greatest natural disaster in the history of the United States.

## COUNT 1

## CAUSE OF ACTION AGAINST THE MANUFACTURING DEFENDANTS UNDER LOUISIANA PRODUCTS LIABILITY ACT

63. The Manufacturing Defendants are manufacturers and their housing units constitute products under the Louisiana Products Liability Act ("LPLA").

64. The exposure to formaldehyde fumes from the Manufacturing Defendants' products and equipment resulted from the normal, foreseeable and intended use of the products and equipment, without substantial alteration in the conditions in which Manufacturing Defendants' sold these housing units.

65. The design of the housing units, using plywood, press board, other composite wood products and other products that contain formaldehyde is defective and posed an unreasonable risk of harm to the Plaintiffs.

66. Alternatively, the use of plywood, press board, other composite wood products and other products that contain formaldehyde constitutes a defect in composition or manufacture that posed an unreasonable risk of harm to the Plaintiffs.

67. The Manufacturing Defendants' products, equipment and supplies were in a defective condition and were unreasonably dangerous under normal use at the time the products and equipment left the Manufacturing Defendants' control. The Plaintiffs were intended and foreseeable users of the alleged defective products, and damages and losses to the Plaintiffs reasonably could have been anticipated by the Manufacturing Defendants.

68. The defects in Manufacturing Defendants' housing units are the result of and/or include, but are not limited to, the following:

   a. In failing to design their respective products so as not to emit dangerous levels of formaldehyde;

   b. In providing housing units which, by virtue of their design and/or manufacture and/or composition, were unreasonably dangerous under reasonably anticipated use;

   c. In providing housing units which, by virtue of a lack of an adequate warning(s), were unreasonably dangerous under reasonably anticipated use;

   d. In providing housing units which did not conform to the express warranties made by Manufacturing Defendants regarding their fitness for use as reasonably anticipated;

   e. In manufacturing, testing, marketing, distributing, licensing and selling of unreasonably dangerous housing units;

   f. In failing to properly test the housing units to properly evaluate the level of emissions of formaldehyde under foreseeable conditions for extended periods of time;

g.  In failing to warn Plaintiffs of the unreasonably dangerous nature of the housing units occupied by the Plaintiffs, or warn adequately of the presence of excessive levels of emissions of formaldehyde and the hazards associated with the excess levels of emissions of formaldehyde in the units.

h.  In failing to ensure that the housing units manufactured and provided to each of the Plaintiffs were suitable for their intended use;

i.  In failing to adhere to any and all express warranties of fitness and safety for the housing units they manufactured and provided;

j.  In manufacturing and providing housing units which were unduly dangerous due to their emissions of formaldehyde; and,

k.  Such other indicia of fault under the LPLA as will be shown at the trial of this matter.

## COUNT 2:

## CAUSE OF ACTION AGAINST NO-BID DEFENDANTS UNDER THE LOUISIANA PRODUCTS LIABILITY ACT

69. Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

70. The No-Bid Defendants qualify as manufacturers under the LPLA as they performed work pursuant to their contracts with FEMA which altered the character, design, construction and/or quality of the product, and the housing units constitute products under the LPLA.

71. The increased exposure to formaldehyde fumes from the alteration of the temporary housing units by the No-Bid Defendants resulted from the normal, foreseeable, and intended use of the products and equipment.

72. The installation and alteration of the temporary housing units, the modifications to the manufacturers' designs, and the "blocking" of units off their wheel base altered the

31

product which increased the effects of the product's defect and posed an unreasonable risk of harm to Plaintiffs.

73. The Plaintiffs were intended and foreseeable users of the alleged defective products, and damages and losses to the Plaintiffs reasonably could have been anticipated by the No-Bid Defendants.

74. The No-Bid Defendants, by installing the temporary housing units on concrete blocks for extended occupancy and, further, by installing residential appliances and heating and air conditioning units, knowingly and intentionally modified the design and the actual use of the units.

75. The defects in the No-Bid Defendants' product are the result of and/or include, but are not limited to the following:

    a. In creating stress and flexing on the frames of the units by lifting significant weight from the wheel base, which distorted the travel trailers' shells allowing for increased moisture intrusion and formaldehyde exposure due to cracks and openings in the shell;

    b. In providing temporary housing units to the Plaintiffs which, by virtue of their composition, refurbishment, reconditioning, and/or construction were unreasonably dangerous under reasonably anticipated use;

    c. In providing temporary housing units to the Plaintiffs which, lacking adequate warnings, were unreasonably dangerous under reasonably anticipated use;

    d. In failing to warn Plaintiffs of the unreasonably dangerous nature of the travel trailer(s) converted to temporary housing units for their intended use by FEMA or of the presence of excessive levels of emissions of formaldehyde;

    e. In failing to ensure that the temporary housing units they installed, refurbished and reconditioned were suitable for their intended use, as long-term housing;

f.  In failing to adhere to any and all of the warnings against the jacking of the units with weight off their wheel base by the manufacturers;

g.  In failing to follow the manufacturers' instructions for the installation and intended use of the temporary housing units;

h.  In providing housing units which were unduly dangerous due to their emissions of formaldehyde; and,

i.  Such other indicia of fault under the LPLA as will be shown at the trial of this matter.

## COUNT 3:

## <u>NEGLIGENCE OF NO-BID DEFENDANTS UNDER LOUISIANA LAW</u>

76. Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

77. At all relevant times the No-Bid Defendants were tasked with the transportation, installation, site identification, preparation, inspection, maintenance and repair, refurbishment and restoration, and removal of the temporary housing units, which caused the Plaintiffs' injuries.

78. The No-Bid Defendants owed a duty to Plaintiffs to provide, transport, install, inspect, maintain, repair, refurbish, recondition and restore safe temporary housing units that did not emit hazardous levels of formaldehyde.

79. The No-Bid Defendants knew or should have known when they provided, transported, installed, inspected, maintained, repaired, refurbished, reconditioned and restored the temporary housing units to the general public (thereby modifying and converting the mobile units into residential installations) the actual and intended use of the temporary housing units by each Plaintiff, and that the temporary housing units would be used in the manner that each Plaintiff herein used the temporary housing units.

80. The No-Bid Defendants breached their duty to the Plaintiffs in failing to act reasonably in the provision, installation, inspection, maintenance, repair, refurbishment, reconditioning and restoration of the temporary housing units; specifically by:

   a. Failing to sufficiently warn the Plaintiffs of the inherently dangerous properties or the foreseeable conditions of the temporary housing units when used for long term occupancy;

   b. Failing to adhere to the manufacturers' warnings against jacking the temporary housing units off the wheel base by "blocking the units;

81. The No-Bid defendants' actions were the proximate cause of the increased exposure of formaldehyde to the Plaintiffs.

82. The No-Bid Defendants contributed to and exacerbated the adverse health impacts upon the residents of the temporary housing units.

**COUNT 4:**

**NEGLIGENCE OF PROCUREMENT DEFENDANTS**

83. Plaintiffs incorporate the above allegations as if fully repeated verbatim herein.

84. At all relevant times the Procurement Defendants were tasked with the identification, election and procurement of FEMA temporary housing units for use in Louisiana following hurricanes Katrina and Rita.

85. The Procurement Defendants owed a duty to Plaintiffs to select units which were suitable for the intended purpose of extended habitation up to and exceeding 18 months.

86. At all relevant times, the Procurement Defendants were in communication with the manufacturers of the travel trailers regarding their use as temporary housing units for FEMA in response to hurricanes Katrina and Rita.

87. The Procurement Defendants knew or should have known when they identified, selected and procured the travel trailers for use as temporary housing units that the manufacturers

specifically warned against such use and clearly indicated in the various owners' manuals that the travel trailers were recreational vehicles designed to be mobile and towable, and were expressly not designed for use as permanent dwellings.

88. The Procurement Defendants knew or should have known that the travel trailers off-gassed formaldehyde and that extended habitation would expose residents to elevated levels of formaldehyde, increased moisture and condensation and a deterioration of the internal soft goods, all of which rendered the travel trailers unfit for FEMA's intended purpose of extended occupancy.

89. The Procurement Defendants knowingly and intentionally elected to procure travel trailers instead of alternative housing more fit for extended occupancy.

90. The Procurement Defendants breached their duty to Plaintiffs in failing to act reasonably in the identification, selection and procurement of the temporary housing units, specifically by:

    a.  Failing to sufficiently consult with the manufacturers of the travel trailers regarding the use of the trailers as FEMA temporary housing units;

    b.  Failing to advise FEMA as to the inadequacy of the travel trailers as temporary housing units; and

    c.  Knowingly and intentionally selecting travel trailers for use as temporary housing units, rather than alternative housing more fit for extended occupancy.

91. The Procurement Defendants' actions were the proximate cause of the increased exposure of formaldehyde to the Plaintiffs, by selecting travel trailers for use as temporary housing units.

92. The Procurement Defendants contributed to the adverse health impacts upon the residents of the temporary housing units by selecting units unfit for extended occupancy.

## COMPENSATORY DAMAGES

93. In addition to and by way of summarizing the compensatory damages prayed for herein, each Plaintiff avers that the Defendants individually and/or jointly, are responsible for all damages which each Plaintiff herein has suffered and continues to suffer as a consequence of Defendants' acts and/or omissions as pled herein, which damages include, but are not limited to, past and future physical injuries, past and future mental and physical pain and suffering, past and future physical impairments and disability, past and future reasonable and necessary medical expenses, past and future loss of earning capacity, past and future loss of enjoyment and quality of life and other damages and injuries, loss of consortium, and loss of use and/or opportunity to use safe and adequate shelter during the period of displacement from a natural disaster, as well as, all general, special, incidental and consequential damages as shall be proven at the time of trial.

## MEDICAL MONITORING

94. In addition to compensatory damages, and pursuant to the applicable laws of Louisiana, Plaintiffs seek the reasonable costs of medical monitoring under a court-supervised medical monitoring fund.

## IV. REQUEST FOR JURY TRIAL

Plaintiffs are entitled to and demand a trial by jury.

WHEREFORE, Plaintiffs respectfully request:

1. That a summons be issued to each of the Defendants so that they can be served the summons along with a copy of this Complaint and be cited to appear and answer same;

2.  That after due process, and a trial by jury, there be a judgment in this matter in favor of each Plaintiff and against Defendants for all compensatory damages together with legal interest thereon from the date of judicial demand until paid, all costs and expenses of these proceedings, and attorneys' fees, declaring that the defendants are liable for all applicable damages and thereafter;

3.  That there be specially included in the judgment in each Plaintiffs' favor provisions for the following damages and relief as found applicable and supported by the evidence:

    a.  past and future physical injuries,

    b.  past and future mental and physical pain and suffering,

    c.  past and future physical impairments and disability,

    d.  past and future reasonable and necessary medical expenses,

    e.  past and future loss of earning capacity,

    f.  past and future loss of enjoyment and quality of life,

    g.  loss of consortium and/or society,

    h.  compensable out-of-pocket expenses related to defendants' wrongdoing, and

    i.  costs of court,

4.  That Plaintiffs be awarded such other and further relief as the Court deems just and proper.

Respectfully submitted,

Lawrence J. Centola Jr. (#3962)
Hurricane Legal Center
600 Carondelet Street, Suite 602
New Orleans, LA 70130
Telephone: (504) 525-1944
Facsimile: (504) 525-1279

Paul Y. Lee
Kaplan Lee LLP
7755 Center Ave., Suite 680
Huntington Beach, CA 92647
Telephone: (714) 891-2200
Facsimile: (714)- 891-2600


By: _____
    LAWRENCE J. CENTOLA, JR.


38

**SERVICE OF PROCESS INFORMATION
(PLEASE SERVE THE FOLLOWING)**

1. **Alliance Homes, Inc. d/b/a Adrian Homes**
   Though its Agent for Service of Process
   Glinn H. Spann
   734 East Main St.
   Adrian, GA 31002

2. **American Camper Manufacturing, LLC d/b/a AMERI-CAMP**
   Through its Agent for Service of Process
   Peter J. Recchio
   1406 Greenleaf Blvd.
   Elkhart, IN 46514

3. **American Homestar Corporation**
   Through its Agent for Service of Process
   Craig A. Reynolds
   2450 South Shore Boulevard
   Ste. 300
   League City, TX 77573

4. **Cavalier Homes Builders, LLC**
   Through its Agent for Service of Process
   The Corporation Company
   2000 Interstate Pk Dr.
   Suite 204
   Montgomery, AL 36109

5. **Cavalier Homes Inc.**
   Through its Agent for Service of Process
   The Corporation Company
   2000 Interstate Pk Dr.
   Suite 204
   Montgomery, AL 36109

6. **Champion Home Builders Co.**
   Through its Agent for Service of Process
   The Corporation Company
   30600 Telegraph Rd.
   Suite 2345
   Bingham Farms, MI 48025

7. **Circle B Enterprises, Inc.**
   Through its Agent for Service of Process
   Jackie Williams
   305 E 3rd Street
   Ocilla, GA 31774

8. **Clayton Homes of Lafayette, Inc (f/k/a Clayton Homes, Inc.)**
   Through its Agent for Service of Process
   John K. McBride
   201 Main Street
   Suite 810
   Lafayette, IN 47902

9. **CMH Manufacturing Inc.**
   Through its Agent for Service of Process
   CT Corporation System
   800 S. Gay Street
   Suite 2021
   Knoxville, TN 37929

10. **Coachmen Industries Inc.**
    Through its Agent for Service of Process
    Corporation Service Company
    251 East Ohio Street
    Suite 500
    Indianapolis, IN 46204

11. **Coachmen Recreational Vehicle Company, LLC**
    Through its Agent for Service of Process
    Corporation Service Company
    251 East Ohio Street
    Suite 500
    Indianapolis, IN 46204

12. **Crossroads RV, Inc.**
    CT Corporation System
    36 S. Pennsylvania St.
    Suite 700
    Indianapolis , IN  46204

13. **Damon Corp**
CT Corporation System
36 S. Pennsylvania St.
Suite 700
Indianapolis , IN  46204

14. **Design Homes, Inc.**
Through its Agent for Service of Process
Randolph Weeks
600 S Marquette Rd.
P.O. Box 239
Prairie Du Chien, WI 53821-0239

15. **Destiny Industries, LLC**
Through its Agent for Service of Process
Lester M. Castellow
700 South Main Street
Moultrie, GA 31768

16. **DS Corp.**
Through its Agent for Service of Process
CT Corporation System
36 S Pennsylvania St.
#700
Indianapolis, IN 46204

17. **Dutch Housing, Inc. d/b/a Champion Homes**
Through its Agent for Service of Process
The Corporation Company
30600 Telegraph Road
Ste. 2345
Bingham Farms, MI 48025

18. **Dutchmen Manufacturing, Inc.**
Through its Agent for Service of Process
The Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801

19. **Fairmont Homes, Inc.**
Through its Agent for Service of Process
Kenneth C. Brinker
502 South Oakland
Nappanee, IN 46550

20. **Fleetwood Canada, Ltd.**
    70 Mount Hope St.
    Lindsay ON, K9V 5G4

21. **Forest River, Inc.**
    Through its Agent for Service of Process
    J. Richard Ransel
    228 W. High St.
    Elkhart, IN 46516

22. **Frontier RV, Inc.**
    Through its Agent for Service of Process
    Lawyer's Aid Service, Inc.
    408 W. 17th Street
    Suite 101
    Austin, TX 78701

23. **Giles Industries, Inc.**
    Through its Agent for Service of Process
    CT Corporation System
    800 Gay Street
    Ste. 2021
    Knoxville, TN 37929

24. **Giles Industries of New Tazewell, Incorporated**
    Through its Agent for Service of Process
    Alan C. Neely
    405 S. Broad St.
    New Tazewell, TN 37825-7243

25. **Golden West Homes**
    Through its Agent for Service of Process
    Dawn M. Johnson
    17917 Lakeshore Dr.
    Weed, CA 96094

26. **Gulf Stream Coach, Inc.**
    Through its Agent for Service of Process
    Kenneth C. Brinker
    503 South Oakland
    Nappanee, IN 46550

27. **Heartland Recreational Vehicles, LLC**
Through its Agent for Service of Process
Brian R. Brady
1001 All Pro Dr.
Elkhart , IN 46514

28. **Homes of Merit, Inc.**
Through its Agent for Service of Process
CT Corporation System
1200 S. Pine Island Rd.
Plantation, FL 33324

29. **Horton Homes, Inc.**
Through its Agent for Service of Process
Steve M. Sinclair
557 Milledgeville Road
Eatonton, GA 31024

30. **Hy-Line Enterprises, Inc.**
Through its Agent for Service of Process
Margaret Flager
52219 Delta Court
Elkhart , IN 46514

31. **Indiana Building Systems, LLC d/b/a Holly Park**
Through its Agent for Service of Process
Lisa Kuhtic
51700 Lovejoy Dr.
Middlebury, IN 46540

32. **Integrity Midwest Inc. d/b/a US Adventure RV**
Through its Agent for Service of Process
David A. Dittmann
Lane 4 Waterman
Davenport, IA 52801

33. **Jayco, Inc.**
Through its Agent for Service of Process
Kennard R. Waver
317 W. Franklin Street
Elkhart, IN 46516

34. **Keystone Instustries, Inc.**
    Through its Agent for Service of Process
    H.B. Green
    6801 Lake Plaza Drive
    Indianapolis, IN 46220

35. **Keystone RV Company**
    Through its Agent for Service of Process
    The Corporation Trust Company
    1209 Orange Street
    Wilmington, DE 19801

36. **KZRV, LP**
    Through its Agent for Service of Process
    Daryl Zook
    9270 W. US 20
    Shipshewana, IN 46565

37. **Lakeside Park Homes, Inc.**
    Through its Agent for Service of Process
    Ben C. Jarvis
    70 Peachstate Drive
    Adel, GA 31620

38. **Layton Homes Cop.**
    Through its Agent for Service of Process
    Linda Phillippsen
    2520 By-Pass Rd.
    Elkhart, IN 46514

39. **Lexington Homes**
    Through its Agent for Service of Process
    John W. Barrett
    404 Court Square
    PO Box 987
    Lexington, MS 39095

40. **Liberty Homes Inc.**
    Through its Agent for Service of Process
    Edward J. Hussey
    1101 Eisenhower Dr. North
    Goshen, IN 46527

41. **Liberty RV & Marine, Inc.**
    Through its Agent for Service of Process
    Wayne A. Spear
    7500 NW 42 Ave Rd.
    Ocala, FL 34482

42. **Morgan Buildings & Spas, Inc.**
    Through its Agent for Service of Process
    The Corporation Trust Company of Nevada
    6100 NEIL ROAD SUITE 500
    Reno, NV 89511

43. **Morgan Building Systems, Inc.**
    Through its Agent for Service of Process
    CT Corporation System
    350 N. St. Paul Street
    Dallas, TX 75201

44. **Oak Creek Homes, LP**
    Through its Agent for Service of Process
    Craig A. Reynolds
    2450 South Shore Boulevard
    Ste. 300
    League City, TX 77573

45. **Oak Creek Homes, Inc.**
    Through its Agent for Service of Process
    Texas Secretary of State
    2450 South Shore Boulevard
    Ste. 300
    League City, TX 77573

46. **Oakwood Homes, LLC**
    Through its Agent for Service of Process
    J. Marc Replogle
    1820 The Exchange
    Ste. 150
    Atlanta, GA 30339

47. **Palm Harbor Homes, Inc.**
Through its Agent for Service of Process
Texas Secretary of State
2450 South Shore Boulevard
Ste. 300
League City, TX 77573

48. **Palm Harbor Manufacturing, LP.**
Through its Agent for Service of Process
Texas Secretary of State
2450 South Shore Boulevard
Ste. 300
League City, TX 77573

49. **Phillips Products, Inc.**
Through its Agent for Service of Process
The Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801

50. **Play-Mor Trailers, Inc.**
Through its Agent for Service of Process
John C. Willibrand
P.O. Box 128
3231 Hwy 63 South
Westphalia, MO 65085

51. **Recreation By Design, LLC**
Through its Agent for Service of Process
Randall K. Rush
21746 Buckingham Rd.
Elkhart, IN 46516

52. **Redman Homes Inc. (f/d/a Dutch Homes)**
Through its Agent for Service of Process
Through its Agent for Service of Process
The Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801
*and*
CT Corporation System
5645 Corporate Blvd.
Ste. 400B
Baton Rouge, LA 70808

53. **River Birch Homes, Inc. and/or River Birch Homes, L.L.C.**
Through its Agent for Service of Process
Delmo Payne
5400 Bexar Ave. E.
Hamilton, AL 35570

54. **Scotbilt Homes, Inc.**
Through its Agent for Service of Process
Sam P. Scott
2888 Fulford Road
Waycross, GA 31503

55. **Silver Creek Homes, Inc.**
Through its Agent for Service of Process
David H. Silvertooth
PO Box 150
Henrietta, TX 76365

56. **Skyline Corporation**
Through its Agent for Service of Process
Linda Phillppsen
2520 By-Pass Road
Elkhart, IN 46514

**Southern Energy Homes, Inc.**
Through its Agent for Service of Process
CT Corporation System
5645 Corporate Blvd.
Ste. 400B
Baton Rouge, LA 70808
*and*
Wendell Batchelor
Highway 41 North
Addison, AL 35540

57. **Starcraft RV, Inc.**
Through its Agent for Service of Process
Glenn E. Killoren
121 W. Franklin St.
Suite 200
Elkhart, IN  46516

58. **Stewart Park Homes, Inc.**
Through its Agent for Service of Process
A. Lucas Stewart, III
219 Industrial Blvd
Thomasville, GA 31792

59. **SunnyBrook RV, Inc.**
Through its Agent for Service of Process
Elvie J. Frey Sr.
201 14th St.
Middlebury , IN  46540

60. **Sunray RV, LLC**
Through its Agent for Service of Process
Alan Neely
405 South Broad St.
New Tazewell, TN 37825

61. **Superior Homes, LLC**
Through its Agent for Service of Process
James C. Roby
816 S. Broadway
PO Box 1600
Watertown, SD 57201-6600

62. **Tom Stinnett Holiday RV Center**
Through its Agent for Service of Process
Tom Stinnett
520 Marriott Dr.
Clarksville, IN 47129

63. **Thor California, Inc., doing business in California as Thor Manufacturing**
Through its Agent for Service of Process
CT Corporation System
818 West Seventh St.
Los Angeles, CA 90017

64. **Thor Industries, Inc.**
Through its Agent for Service of Process
CT Corporation System
1300 E. 9th Street
Cleveland, OH 44114

65. **Timberland RV Company d/b/a Adventure Manufacturing**
    Through its Agent for Service of Process
    James Brotherson
    317 W. Franklin St.
    Elkhart , IN  46516

66. **TL Industries, Inc.**
    Through its Agent for Service of Process
    Rebecca Butler Power
    221 W. Lexington Ave.
    Elkhart, IN 46516

67. **Vanguard Industries of Michigan, Inc. (a/k/a Palomino RV)**
    Through its Agent for Service of Process
    Scott A. Day
    31450 M-86
    West Colon, MI 49040

68. **Viking Recreational Vehicles, LLC**
    Through its Agent for the Service of Process
    CSC Lawyers Incorporating Service
    601 Abbot Road
    East Lansing, MI 48823

69. **Waverlee Homes, Inc.**
    Through its Agent for Service of Process
    Phil Fowler
    Hwy. 278 East
    Hamilton, AL

70. **CH2M Hill Constructors, Inc.**
    through its registered agent for service:
    CT Corporation System
    5615 Corporate Blvd., Ste. 400B
    Baton Rouge, Louisiana 70808

71. **Fluor Corporation**
    Through its Agent for Service of Process
    Corporation Service Company
    2711 Centerville Road Suite 400
    Wilmington, DE 19808

72. **Morgan Building and Spa Manufacturing Corporation**
Through its registered Agent for Service of Process
CT Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, Louisiana 70808

73. **North American Catastrophe Services, Inc.**
Through its Agent for Service of Process
Brenda J. Anderson, OFF. MG
620 Dijon Dr.
Melbourne, FL 32937

**Exhibit "A"**
**Additional Plaintiffs**

Sonia Joseph
Eddie Mae Porter
Gerald Truxillo
Gerald Truxillo on behalf of Sophia Wells
Anthony Griffin
Chastity Sylvester
Lucien Ganier
Rhonda Picquet
Rhonda Picquet on behalf of Megan Sandifer
Misha Sylve
Sylvia Hills
Justin Hills
Shamika Hills
Shamika Hills on behalf of Sariah Duplessis
Ken Williams
Kimberly Williams
Kimberly Williams on behalf of Mark Detrion
Kimberly Williams on behalf of Shonique Detrion
Jerry Williams, Sr.
Wanda Williams
Jerry Williams, Sr. on behalf of Kyante Williams
Ebony Williams
Ebony Williams on behalf of Paris London Hite
Chester Wilson
Zealise Lacour
Cynthia Griffin
Mario Martinez
Rechelle Ragas
Rechelle Ragas on behalf of Zaria Ragas
Rechelle Ragas on behalf of Allon Ragas
Tiffany Picquet
Joyce Sylvester
Romaine Riley
Kennetha Franklin
Melvin Sylve
Keyondra Joshua
Herman Mackey on behalf of Herman Mackey
Herman Mackey, Jr
Gary Sylvester, Sr
Trinese Sylvester

Gary Sylvester  on behalf of Gary Sylvester
Gary Sylvester  on behalf of Trenaisha Sylvester
Ernie Tarrance, Jr
Chintasha Lafrance
Ernie Tarrance on behalf of Essence Tarrance
Brenda L. Cooper
Bernard Dunklin
Freddie Smith
Bridgett Franklin Smith
Rubin Tolliver
Linda Beal
Kim Sylve
Brian Thompson
George Brown
Shawn Behrens
David P. Behrens
Brittney Roppolo
Patricia Behrens Mangano
Patricia Mangano on behalf of Sebastien Behrens
Patricia Mangano on behalf of Isaiah Mangano
Easten Sullen, Jr
Ashley Steele
Shirley Sullen
Charalda Sullen
Maranda Jones
Maranda Jones on behalf of Tailor Jones
Maranda Jones on behalf of Derrick Jones
Diane Davis
Diane Davis on behalf of Brittany Davis
Diane Davis on behalf of Kiara Sanders
Diane Davis on behalf of Isaiah Sanders
Diane Davis on behalf of Josiah Sanders
Janice Jones
Solomon Jones
Jessica Jones
Janice Jones on behalf of Jesse Jones
Janice Jones on behalf of Jazmine Jones
Janice Jones on behalf of Maci Jones
Janice Jones on behalf of Jarred Jones
Melvin Sino
David  Manes, Jr
Aliesha Manes
David Manes Jr.  on behalf of Damien Manes
David Manes Jr. on behalf of Cameron Manes

David Manes Jr. on behalf of Dylan Manes
Cynthia Hauck
David hauck
Cynthia Hauck on behalf of Gabrielle Hauck
Ducote Curtis
Ducote Curtis
Curtis A Ducote
Rebecca Ducote
Gail Perkins
Theodore Perkins, Jr
Gail Pinkins
Theodore Perkins, Jr
Gerald Rodriguez, Sr
Betty Rodriguez
Gregg Gagliano
Herman G. Campo, Jr
Raymond J. Campo
Carl C. Campo
Herman Campo, Jr
Amanda Boteler
Bobby Boteler
Sean Boteler
Ashley Ryan
Nicole Parker
Clement Parker
Nicole Parker on behalf of Caylin Parker
Nicole Parker on behalf of Cyler Parker
Keith Andrews, Jr.
Jessica Andrews
Keith Andrews on behalf of Keith Andrews
Keith Andrews on behalf of Kennedy Andrews
Alice Sino
Sam Johnson
Tyra Johnson Hillman
Demond Hillman
Percy Griffin
Wanda Griffin
Melinda Carpenter
Frank Franklin, Sr
Iona Franklin
Todd Franklin, Jr
Edward Ceaser
Wanda Ceaser
Edward Ceaser III

Cartrina Ceaser
Edward Ceaser on behalf of Shalyr Ceaser
Dorothy Bell
Martin Cox
Mary Sanders
Ferdinand Espradron
George Bolden
Deborah Danastasio
Joey Broussard
Hector Gallardo
Hector Gallardo Jr.